UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

SOUTHERN DIVISION

| | |
|---|---|
| **SUTTON LEASING, INC.**, <br><br> Plaintiff, <br><br> vs. <br><br> **VETERANS RIDESHARE, INC., VETERANS EXPRESS, LLC, YOUR LEASING SOLUTION, LLC, CAR CHAMPS FINANCE, LLC**, <br><br> Defendants. | 2:20-CV-10815-TGB <br><br> **ORDER GRANTING PLAINTIFF'S EX PARTE MOTION UNDER M.C.R. § 3.105(E)(2)(a) AND SCHEDULING A TELEPHONIC HEARING PURSUANT TO § 3.105(E)(3)** |

On March 28, 2020, Plaintiff lessor, Sutton Leasing, Inc., ("Sutton Leasing"), filed a complaint, in which it alleged that Defendants lessees, had, among other things, defaulted under the terms of a master lease agreement and were refusing to deliver possession of some 550 vehicles that Plaintiff had leased to Defendants. ECF No. 2. On the same day, Plaintiff filed a pleading (i.e., "Verified motion for immediate possession pending final judgment and/or for injunctive relief"), in which it sought to obtain: (1) an ex parte order that would direct Defendants to "refrain from damaging, destroying, concealing or disposing of, or using so as to substantially impair its value, the property until further order of the

1

Court," and (2) setting an expedited telephonic hearing to decide whether Plaintiff should be granted possession of its property prior to final judgment. ECF No. 2.

For the reasons stated herein, the Court will **GRANT** Plaintiff's request for an ex parte order that directs Defendants to "refrain from damaging, destroying, concealing or disposing of, or using so as to substantially impair its value, the property until further order of the Court," pursuant to M.C.R. § 3.105(E)(2), having found good cause, and **GRANT** Plaintiff's request for an expedited telephonic hearing to determine whether Plaintiff should be granted possession of the property prior to final judgment, pursuant to M.C.R. § 3.105(E)(3). An expedited telephonic hearing will be scheduled in a forthcoming order.

I.

Plaintiff is a Michigan-based company that specializes in vehicle fleet management and leases numerous vehicles to customers. Verified Complaint, ECF No. 1, PageID.3. Plaintiff alleges Defendants are "affiliated business entities that operate a variety of vehicle leasing, transportation and delivery service businesses." *Id.* at PageID.4. According to Plaintiff, Defendant Car Champs executed a Vehicle Lease Agreement with Plaintiff ("Master Lease Agreement"), wherein Plaintiff (as lessor) agreed to lease vehicles to Car Champs (as lessee) in exchange for payment. *Id.* Plaintiff alleges that "[a]ll vehicles, or Units, leased by

2

Sutton Leasing are governed by the Master Lease Agreement's terms." *Id.*

Under the terms of the Master Lease Agreement, ownership of, and title to, the vehicles do not transfer to the lessee and the lessee does not "acquire any right, title, or interest whatsoever, legal or equitable, in or to such Unit." ECF No. 1-2, PageID.37. Therefore, Plaintiff's verified complaint alleges that Plaintiff is the owner of the fleet of the approximately 550 vehicles currently leased to Defendants. The lease also requires the lessee to "inform Lessor [Sutton Leasing] of any change in the location in which a Unit primarily is operated and, on request, shall provide Lessor with data concerning the use and operation of such Unit." *Id.* at PageID.35. Further, default under the Master Lease Agreement can occur several ways, including if the "[l]essee breaches any terms or conditions of [the lease] and does not remedy such breach within ten (10) days after demand by Lessor." *Id.* at PageID.36. If default occurs, the Master Lease Agreement empowers Plaintiff "without prejudice to other remedies legally available to it and without notice to Lessee to take possession of and remove all Units. . . . Lessee grants lessor the right to enter any premises on which any Unit may be kept in order to repossess and remove such Unit." *Id.* The Master Lease Agreement includes a Michigan choice of law provision. ECF No. 1-2, PageID.37.

After Car Champs and Sutton Leasing signed the Master Lease Agreement, a number of addenda were executed permitting Car Champs

to sublease the vehicles to other entities and assign the Master Lease Agreement to an "affiliated or related party" in exchange for an additional $1 million security deposit. ECF No. 1, PageID.7. Car Champs later assigned the lease or sublet the vehicles to Defendants Veterans Express, Veterans Rideshare, and Your Leasing Solution ("YLS"). *Id.* Under this agreement, Plaintiff alleges that approximately 550 vehicles are currently leased by the Defendants. *Id.* at PageID.8.

Plaintiff alleges that Defendants are currently holding the 550 vehicles owned by Sutton Leasing and are "refusing to relinquish possession" despite being unable to pay its $600,000 per month lease. ECF No. 2, PageID.142; ECF No. 1-14 (Plaintiff indicating to Pozek that it had to pay Defendants' bills for February and March 2020). Plaintiff also claims that Defendants are refusing to permit Plaintiff access to the vehicles or even tell Plaintiff where the vehicles are located. *Id.* In support, Plaintiff provides an affidavit from a Sutton Leasing employee, Robert Blair, who personally communicated with Chris Pozek—the alleged controller and manager of Defendants—in which Blair states that Pozek's "companies are unable to meet the financial obligations owed to Sutton Leasing" and "that there are approximately 12 missing titles for the vehicles." ECF No. 1-16, PageID.115. Blair also testified that he personally visited a storage lot to inspect some of the vehicles leased to Defendants and was told to leave. *Id.* He also references a call that Plaintiff received from a storage company in Arkansas on March 24,

4

2020, indicating that a "wrecker truck" was there to pick up a vehicle owned by Plaintiff and leased to YLS and that the contact information for the tow truck company were likely two individuals associated with Pozek. *Id.* While the vehicle was not towed because the driver was given an incorrect Vehicle Identification Number or VIN, Plaintiff alleges that this incident demonstrates that "Pozek and the Defendants are clearly trying to move the Units to new locations to further conceal their whereabouts from Sutton Leasing." ECF No. 1, PageID.19.

Plaintiff contends its counsel has been in active communication with Defendants' counsel throughout March 2020 and asserts that Defendants are now seeking upwards of $600,000 before it will release the vehicles to Plaintiff. *Id.* at PageID.15; ECF No. 1-13. Plaintiff alleges that Defendants refuse to relinquish the vehicles "arguing that there are 'liens' on the [vehicles] for 'storage' fees and 'maintenance' and 'repair' costs." ECF No. 1, PageID.16. Plaintiff contends that there are no liens on the vehicles and that Defendants are collectively indebted to Plaintiff in the total amount of $25,471,731.90. ECF No. 1-19, PageID.134.[1]

## II.

In its "verified motion for immediate possession pending final judgment and/or for injunctive relief," filed pursuant to Fed. R. Civ. P. 64

---

[1] This is not intended to be a summary of all the allegations in Plaintiff's complaint, but rather those allegations the Court believes are most pertinent to resolving the instant motion.

5

and M.C.R. § 3.105, Plaintiff claims that Defendants have defaulted on the Master Lease Agreement in several ways, including but not limited to, by failing to make at least the last two monthly lease payments of $600,000, refusing to permit Plaintiff to inspect the vehicles, and refusing to voluntarily relinquish control of the vehicles. ECF No. 1, PageID.21, 23. Thus, Plaintiff believes that it is entitled to an ex parte order which, if granted, would restrain Defendants from "damaging, destroying, concealing, disposing of, or using so as to substantially impair its value," the vehicles Plaintiff currently has leased to Defendants (the collateral) pending a hearing on its motion. It also believes that it is entitled to immediate possession of the vehicles pending a final judgment and seeks an expedited telephonic hearing for the Court to make such a determination.

Fed. R. Civ. P. 64 states, in part, that "every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment." And the Michigan Court Rules provide the following:

> After a motion for possession pending final judgment is filed, the court, *if good cause is shown*, must order the defendant to
>
> (a) refrain from damaging, destroying, concealing, disposing of, or using so as to substantially impair its value, the property until further order of the court; and
>
> (b) appear before the court at a specified time to answer the motion.

6

M.C.R. § 3.105(E)(2) (emphasis added).

But pursuant to Fed. R. Civ. P. 1, the Federal Rules of Civil Procedure must "govern the procedure in all civil actions and proceedings in the United States district courts." Therefore, "Plaintiff's request for the issuance of an ex parte injunctive order will be construed as a motion for the issuance of a temporary restraining order under Fed. R. Civ. P. 65(b)." *JP Morgan Chase Bank, N.A. v. Superior Carpet Supplies, Inc.*, 2009 WL 10720329, at *2 (E.D. Mich. June 19, 2009) (citing *Glacier Sales and Engineering, LLC v. Eagle Plastics Corp.*, 2007 WL 2694402, at *1 (E.D. Mich. Sept. 11, 2007) (request under M.C.R. § 3.105 to be analyzed according to temporary restraining order standard); *Wells Fargo Equip. Finance, Inc. v. Eagle 1 Tree Serv., LLC*, No. 08-13142, 2008 U.S. Dist. LEXIS 70813 (E.D. Mich. Sept. 18, 2008) (same)).

Rule 65(b), which governs temporary restraining orders, states, in part:

> The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if (A) specific facts in an affidavit or verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be granted.

Moreover, to determine whether the Court should grant the temporary restraining order, it must balance four factors: "(1) whether the movant has shown a strong likelihood of success on the merits; (2) whether the

7

movant will suffer irreparable harm if the injunction is not issued; (3) whether the issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuing the injunction." *JPMorgan Chase*, 2009 WL 10720329, at *2 (quoting *Overstreet v. Lexington-Fayette Urban Co. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002) (citations omitted)).

Here, specific facts in Plaintiff's verified complaint and the Affidavit of Mr. Blair clearly show that immediate and irreparable loss or damage will result to Plaintiff before Defendants can be heard in opposition because Blair testified that Defendants have already attempted to move and conceal vehicles owned by Plaintiff and Pozak admitted to Blair that "his companies are unable to meet the financial obligations owed to Sutton Leasing." ECF No. 1-16. Plaintiff's counsel has also certified in the pending motion that it made efforts to seek concurrence with Defendants' counsel in the relief requested. ECF No. 2, PageID.137. Further, the supported allegations contained in the motion justify the ex parte nature of Plaintiff's request; Plaintiff has come forward with documented instances of Defendants' attempts to relocate or conceal Plaintiff's property. And the Michigan Court Rule under which Plaintiff seeks immediate relief, M.C.R. § 3.105(E) permits such an ex parte motion.

Plaintiff has also shown a likelihood of success on the merits of its claim for an order demanding that Defendants "refrain from damaging,

8

concealing, disposing of, or using so as to substantially impair its value," the vehicles, because Plaintiff has provided the Court with good cause to do so. M.C.R. § 3.105(E)(2)(a) (explaining that the Court *must* order the defendant to refrain from damaging, destroying or concealing the property if, after the plaintiff files a motion for possession, the court determines good cause has been shown). And as explained in greater detail above, Plaintiff has provided evidence that it will suffer irreparable harm if immediate relief is not granted. If Defendants are able to continue to conceal Plaintiff's vehicles, as alleged, Plaintiff will be unable to recover some or all of the over $25 million Plaintiff alleges Defendants currently owe Plaintiff. Additionally, the Court can discern no harm that could come to others by issuing the temporary restraining order; pursuant to the terms of the Master Lease Agreement, Plaintiff owns the vehicles and has a right to inspect and repossess them. Finally, the public interest would be served in issuing the temporary restraining order because it would carry out Plaintiff's rights under M.C.R. § 3.105(E) without causing undue harm to Defendants.

Therefore, Plaintiff is entitled to an ex parte temporary restraining order directing Defendants to "refrain from damaging, destroying, concealing, disposing of, or using so as to substantially impair its value," all vehicles Defendants are currently leasing from Plaintiff pursuant to the Master Lease Agreement and any relevant accompanying addenda.

If a court determines that good cause has been shown and orders the defendants to refrain from "damaging, destroying, concealing," etc., the subject property pursuant to M.C.R. 2.105(E)(2)(a), subsection (E)(2)(b) directs the defendants to "appear before the court at a specified time to answer the motion," and subsection (E)(3) directs the plaintiff to serve a copy of the motion and the Court's order pursuant to subsection (E)(2)(a) on the defendants, at least seven (7) days before such a hearing. Plaintiff here requests such a hearing.

### III.

Accordingly, it is **HEARBY ORDERED** that:

(a) Defendants shall refrain from damaging, destroying, concealing, disposing of, or using so as to substantially impair their value, all vehicles Defendants are currently leasing from Plaintiff pursuant to the Master Lease Agreement and any relevant accompanying addendums, until further order of the Court; and;

(b) Plaintiff's Counsel shall serve a copy of its Complaint (ECF No. 1), its motion (ECF No. 2) and a copy of this Order on Defendants.

**IT IS FURTHER ORDERED** that the Court shall hold a hearing regarding Plaintiff's motion for immediate possession on a date to be determined by the Court following service of the Complaint, motion, and this Order on Defendants. The Court will reserve ruling on whether Plaintiff is entitled to possession of the property pursuant to M.C.R. § 3.105(E)(4) until such time as Defendants provided a response to

Plaintiff's motion and the Court has held a full hearing allowing opportunity to be heard on all sides.

DATED: March 31, 2020.

BY THE COURT:

/s/Terrence G. Berg
TERRENCE G. BERG
United States District Judge